3

(Post 11/2015)

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
_____Central_____ **DIVISION**

MAY **1 3** 2022

**TAMMY H. DOWNS, CLERK**
By: _____
                                    **DEP CLERK**

Phyllis L Walker
_____
_____

(Name of plaintiff or plaintiffs)

4:22-cv-450 - KGB

v.

CIVIL ACTION NO. FSIS -2020- 00608
(case number to be supplied by the assignment clerk)

USDA
Thomas J. Vilsack secretary
(Food safety And INSpection service) Agency
(Name of defendant or defendants)

This case assigned to District Judge Baker
and to Magistrate Judge Harris

### COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1.   This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for

employment discrimination.  Jurisdiction is specifically conferred on the Court by 42 U.S.C.

§2000e-5.  Equitable and other relief are also sought under 42 U.S.C.  §2000e-5(g).

2.   Plaintiff, Phyllis L Walker _____, is a
                  (name of plaintiff)
citizen of the United States and resides at 4210 W Burnett _____,
                                             (street address)
Pine Bluff ____, Jefferson, Arkansas, 71603,
   (city)               (county)        (state)      (ZIP)
870-718-6093 .
  (telephone)

                         USDA
3.   Defendant Thomas J.Vilsack Secretary (Food safety and Inspectatives at, or its
         Tyson Food LLC   (name of defendant)
business is located at 5505 Jefferson Pkwy _____, Pine Bluff ____,
                        (street address)                    (city)
Jefferson, Arkansas, 71602.
   (county)      (state)      (ZIP)

4.   Plaintiff sought employment from the defendant or was employed by the

3

TYSON Food INC: USDA

defendant at 5505 Jefferson Pkwy , Pine Bluff ,
　　　　　　　　(street address)　　　　　　　　　　　(city)
Jefferson , Arkansas , 71603 .
　(county)　　　　　(state)　　　　　(ZIP)

5.　　Defendant discriminated against plaintiff in the manner indicated in paragraphs 9 and 10 of the complaint on or about March – 13 2020 .
　　　　　　　　　　　　　　　(month)　　(day)　　　　　(year)

6.　　Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission charging defendant with the acts of discrimination indicated in paragraphs 9 and 10 of this complaint on or about March-16 – 2020 .
　　　　　　　　　　　　　　　　　　　　　　　　　　(month)　　(day)　　(year)

7.　　The Equal Employment Opportunity Commission issued a Notice of Right to Sue which was received by plaintiff on 02 – 14 - 2022 , a copy of which notice
　　　　　　　　　　　　　　　　　　　　(month)　(day)　(year)
is attached to this complaint.

8.　　Because of plaintiff's (1) Black race, (2) Black color, (3) Female sex, (4) Christian religion, (5) African-Amer national origin, defendant:

　　　(a) _____ failed to employ plaintiff.

　　　(b) _____ terminated plaintiff's employment.

　　　(c) ✔ failed to promote plaintiff.

　　　(d) Submit FSIS -2019 -00312 , FSIS-2018- 00731 FSIS – 2007 – 00925 . FSIS 2008 -00680 FSIS – 2007 – 00393. 4-A ON Specifed dates management failed to Address Her ON The Job INJuries .

9.　　The circumstances under which the defendant discriminated against plaintiff were

as follows: _IN April 2020, Management Required Her To Physically Report to her City Station for work And failed to Inform Employes that their coworker test Positive for covid_ 2. On _March 13, 2020 management Issued a Reprimand_

3. On _AN unspecitified date (5). Management assigned for duties That were_ Located In _a contaminated environment which is not regularly cleaned And failed To faikd To approve her return to hes orignal wosk Location or For a Lateral Transfer_ To Another Location : And _q. On Several dates. She was Subjected to various Incidents of harrasse_ Including But not limited To _A on Specified dates management failed to Address From The Job Injury_

10.    The acts set forth in paragraph 9 of this complaint:

(a) _Yes_ are still being committed by defendant.

(b) _____ are no longer being committed by defendant.

(c) ▓▓▓▓ may still be being committed by defendant.

11.    Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission which charges are submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

(a) _____ Defendant be directed to employ plaintiff, and

(b) _____ Defendant be directed to re-employ plaintiff, and

(c) ___✓___ Defendant be directed to promote plaintiff, and

(d) _____ Defendant be directed to _Physical, And Mental Health Care, Pain And Suffer Compensation ECT?_

and that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

_Phyllis L. Walker_

SIGNATURE OF PLAINTIFF

**United States
Department of
Agriculture**



**Office of the
Assistant Secretary
for Civil Rights**

Center for Civil
Rights Enforcement

1400 Independence
Avenue SW

Washington, DC
20250

**UNITED STATES DEPARTMENT OF AGRICULTURE
Center for Civil Rights Enforcement**

———————————————— )
                               )
Phyllis Walker           )
      Complainant    )
                               )
          v.            )
                               )   USDA Complaint No.: FSIS-2020-00608
Thomas J. Vilsack     )
Secretary                )
Department of Agriculture   )
      Agency          )
———————————————— )

### Final Agency Decision

### Introduction

In accordance with the Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110(b), this is the final decision of the United States Department of Agriculture (USDA) on this complaint.

### Issues Presented

Whether the Food Safety & Inspection Service (FSIS, or Agency) subjected Complainant to discrimination and harassment (non-sexual) based on race (Black), color (Black), sex (Female), age (unspecified), national origin (African American), disability (unspecified) and reprisal (prior EEO activity) when:

1. In April 2020, management required her to physically report to her duty station for work and failed to inform employees that their co-workers tested positive for COVID-19;

2. On March 13, 2020, management issued her a Letter of Reprimand;

3. On an unspecified dates(s), management assigned her duties that were located in a contaminated environment which is not regularly cleaned and failed to approve her return to her original work location or for a lateral transfer to another location; and

**USDA IS AN EQUAL OPPORTUNITY PROVIDER, EMPLOYER AND LENDER**

4.  On several dates, she was subjected to various incidents of harassment, including but not limited to:

    a.  On specified dates, management failed to address her on the job injuries.

## Procedural History

The record reflects Complainant first contacted an EEO counselor regarding his EEO complaint on March 16, 2020. A Notice of Right to File (NRF) a formal complaint was issued on April 15, 2020. Complainant's formal EEO complaint was filed on August 12, 2020. A letter of acceptance was issued on September 3, 2020. A copy of the Report of Investigation (ROI) was issued on December 10, 2020. On January 6, 2021, Complainant requested a Final Agency Decision (FAD). In accordance with 29 C.F.R. §1614.110(b), a FAD is hereby issued on the merits of the complaint

## Factual Background

Complainant is a Food Safety Inspector/Slaughter, GS-1863-07/10, with National Beef Packing, FSIS, USDA located in Liberal, Kansas (KS). She has been with the Agency since 1990 and transferred to the Liberal, Kansas location in 2018. Complainant states RMO1 is her first-level supervisor, and RMO2 is her second-level supervisor. (ROI; Ex. 8; pgs. 55-56)

*Responding Management Officials (RMOs)*

RMO1 (race: Caucasian; sex: Male; color: White; age: 65 (D.O.B.: 11/1954)); national origin: American; no disability: yes; prior EEO activity) is the Supervisory Consumer Safety Inspector, GS-1862-10, with Field Operations, FSIS, USDA located in Liberal, KS. He has been in this position since October 2015 and has been with the Agency for 27 years. He is Complainant's first-level supervisor. He is aware of Complainant's race, color, sex, age, national origin. He is not aware of her prior EEO activity or disability. (ROI; Ex. 10; pgs. 205-207)

RMO2 (race: Asian/Vietnamese; national origin: Vietnamese; color: Brown; sex: Male; no disability; age: 45 (D.O.B.: 01/1975)); no disability; prior EEO activity) is the Supervisory Consumer Safety Inspector, GS-1862-10, with FSIS, USDA located in Liberal, KS. He has been in the position for 4 years and with the Agency since 2003. He is aware of Complainant's race, color and sex, but he is not aware of Complainant's national origin, EEO activity, or disability. Complainant was in his supervisory line. (ROI; Ex. 11; pgs. 215-217)

RMO3 (race: Caucasian; color: White; national origin: United States; sex: Male; prior EEO activity; no disability; age: 48 (D.O.B.: 12/1971)) is the Supervisory Veterinarian Medical Officer, GS-0701-12, with the Office of Field Operations, FSIS, USDA located in Liberal, Kansas. He has been in this position since 2004. He has been in the Agency

for 19 years. He is Complainant's second-line supervisor. He was aware of Complainant's race, color, sex, age, and national origin, but he is not aware of Complainant's prior EEO activity or disability. (ROI; Ex. 12; pgs. 224-226)

Employee Labor Relations Officer (ELRO) (race: Caucasian; color: White; sex: Female; age: 38 (D.O.B.: 11/1982)), national origin: American; prior EEO activity; disability: unknown), is a ELRO, GS-14, with the Inter Mountain Region, National Park Service, USDA, located Lakewood, Colorado. She has been in this position since October 2020. Prior to this position, she was an Employee Relations Specialist with FSIS, USDA, for about a year. She is only aware of Complainant's sex based upon her name. (ROI; Ex. 13; pgs. 236-239)

## Statement of Facts

**Issue 1:**   **In April 2020, management required her to physically report to her duty station for work and failed to inform employees that their co-workers tested positive for COVID-19.**

### Complainant's Allegations

Complainant states she was in the process of returning to her duty states from a detail while COVID-19 was beginning. Complainant contends there were sick co-workers who were not wearing masks at her duty station. Complainant contends that for several weeks, inspectors were missing from work; however, supervisors did not alert them of any positive COVID-19 cases. Complainant alleges her co-worker had COVID, then RMO3 informed her and other workers of positive COVID-19 cases amongst the inspectors and told them the health department would provide COVID-19 tests. Complainant contends she was pulled from work due to exposure to COVID-19, exhibiting symptoms, and was placed on a 72-hour quarantine. Complainant alleges USDA did not offer to pay the cost of the test, which was $150, and the COVID-19 test had to be done while off duty. Complainant states she ended up taking a COVID-19 test through National Beef. Complainant states she was quarantined after taking the COVID-19 test and was awaiting her results when RMO3 called and told her she could not be barred from returning to work as she was not running a fever. Complainant states she declined to return to work until she received her results. Complainant alleges the Agency was not following the policy that anyone with COVID-19 symptoms or had been exposed to COVID-19 should quarantine for 14 days. Complainant contends she was treated differently based on her race, color, age, disability, national origin, prior EEO, and sex. (ROI; Ex. 8; pgs. 57-59)

### Agency's Response

RMO1 states at this time COVID-19 was new, and all employees still reported to work unless they had a doctor's note stating they were high-risk. RMO1 contends that at the time, the Agency's policy was that if you tested positive for COVID-19 you received 2-weeks of pay, and if you are not showing symptoms prior to the end of the 2-weeks, you

can return to work. RMO1 contends he is unsure when he was first notified of a positive COVID-19 case. RMO1 contends based upon the Agency's policy, he requested Complainant report to her duty station.   (ROI; Ex. 10; pgs. 208-209)

RMO2 states he was supervising the B Shift while Complainant was on the A Shift at this time. RMO2 contends the Agency policy at the time when COVID-19 started was that unless an employee has medical documentation to support their reason not to report, they are to report to work. RMO2 states that employees wore masks, were socially distanced, and had plexiglass dividers during this time.  (ROI; Ex. 11; pgs. 217-218)

RMO3 contends everyone was required to work, and he does not recall any specific request by Complainant to excuse her from work. RMO3 states when the Agency became aware inspectors had tested positive for COVID-19 there was a meeting to inform the employees. (ROI; Ex. 12; pgs. 226-227)

**Issue 2:        On March 13, 2020, management issued her a Letter of Reprimand.**

*Complainant's Allegations*

Complainant states she was issued the Letter of Reprimand (LOR) on March 13, 2020, by ELRO; however, she states she did not sign the LOR. Complainant states she was issued a LOR for failure to pay the credit card balance. Complainant contends she did not understand the instructions concerning using the credit card. Complainant contends she was making regular payments, but the balance on her credit card unexpectedly increased after she had paid it off. Complainant contends one of the hotels continuously charged her credit card. Complainant contends she also believed the government had paid her credit card and was informed she had a credit of $400, which she used to pay the balance. Complainant contends RMO1 told her she would not receive a lateral job transfer or promotion because of the credit card balance. Complainant contends the LOR states on her personnel file for 2 years and has caused her great stress, anxiety, and depression. Complainant contends her other co-workers, White and Mexican women and men who owed the government on a credit card, received lateral transfers or promotions to the chicken plants. Complainant contends she was treated differently because of her sex, age, national origin, disability, and EEO disability. (ROI; Ex. 8; pgs. 59-62)

*Agency's Response*

RMO1 states Complainant's LOR was issued by the Springfield District Office. RMO1 contends Complainant was issued the LOR because her government credit card was past due. RMO1 states they had discussed Complainant's past due credit card with her prior to issuing the LOR. RMO1 contends Complainant was asked to bring in her billing statements and bank statements to check for any mistakes; however, Complainant did not bring in this documentation. RMO1 states the other employee, a white female who received a lateral position, did have a credit card balance, preventing her lateral transfer. RMO1 contends this employee was also issued a LOR. RMO1 states after the white

female employee's credit card issue were resolved, she was promoted to a position in Texas to which she had applied. (ROI; Ex. 10; pgs. 209-210)

RMO2 states the LOR came from the District Office. RMO2 states he was the supervisor who gave it to her. RMO2 states Complainant received the LOR because her government credit card was past due. RMO2 states Complainant indicated she had not received mail concerning her account. RMO2 contends others were not treated differently. RMO2 states he is not aware of a white female employee being treated differently. (ROI; Ex. 10; pg. 219)

RMO3 states a Recommendation for Disciplinary Action was generated by Supervisory Consumer Safety Inspector based on the direction of the Front Line Supervisor. RMO3 states Labor Employee Relations Department issued the LOR. RMO3 states two supervisors delivered the LOR. RMO3 states a group of employees had issues with travel charge cards, including Complainant. RMO3 states Complainant had repeated credit card charge delinquencies. (ROI; Ex. 12; pgs. 228-229)

ELRO states she signed off on the Complainant's LOR. ELRO states she does not recall the specifics of the case. (ROI; Ex. 13; pgs. 236-239)

**Issue 3:**      **On an unspecified date(s), management assigned her duties that were located in a contaminated environment which is not regularly cleaned and failed to approve her return to her original work location or for a lateral transfer to another location.**

*Complainant's Allegations*

Complainant states she was informed in the fall of 2018 by the Springdale District Office she would have to transfer to the Liberal, Kansas location or she would not have a job. Complainant states she received a transfer in writing and was also informed it was due to work reduction and reorganization. Complainant contends this transfer was a temporary reassignment for one year. Complainant contends her return to her original work location or a lateral transfer were not approved. Complainant contends there was a new plant in Arkansas, but she was not called about any positions there. Complainant contends she broadened her lateral transfer request to include states such as Texas and Louisiana and has gotten calls for other plants, but they are too far. Complainant contends her hardship transfer was denied. Complainant contends her health has been compromised while at the Liberal, Kansas plant. Complainant contends she was told she needed to improve her resume. Complainant contends she was treated differently because of her race, color, sex, age, national origin, disability, and EEO activity. Complainant contends a white female was treated more favorably and transferred to a chicken plant. (ROI; Ex. 8; pgs. 62-64)

*Agency's Response*

RMO1 states a mild ammonia smell was noticed at the plant, so safety personnel was notified and checked. RMO1 contends the reading was from 2ppm to 4ppm on the meter, whereas OSHA allows p to 50ppm, and the company evacuates at 25ppm. RMO1 contends he offered to relieve Complainant of her position so she could be away from the area; however, Complainant refused to move from her position but continued to complain about the odor. RMO1 contends Complainant would not move, and after a few minutes, the odor was gone. (ROI; Ex. 10; pg. 210)

RMO1 states that the policy or procedure for reassignment is for an employee to submit an application for either a lateral reassignment or a promotion. RMO1 states Complainant was transferred to us due to a work reduction at the poultry plant in Arkansas. RMO1 states Complainant would have to apply to be promoted for that position. RMO1 contends he was not involved in the decision to approve Complainant's promotion or lateral request. RMO1 contends Complainant was offered a lateral, but it was not in an area Complainant wanted to go. RMO1 contends he notified Complainant of a promotion opportunity. RMO1 states most of the employees who transferred to Springdale District were promoted out rather than lateraled. (ROI; Ex. 10; pgs. 210-211)

RMO2 states Complainant did not make the final roster when the procedures for inspection were changed in poultry plants. RMO2 contends displaced employees were placed in other plants. RMO2 denies knowing about any contaminated environments. RMO2 states he did not fail to approve Complainant's request to return to her original work location or for a lateral transfer to another location. RMO2 states he has no knowledge about Complainant's hardship transfer. RMO2 states the district office decides hardship transfers. RMO2 contends the Complainant can fill out the paperwork for a transfer at any time. (ROI; Ex. 10; pgs. 220-221)

RMO3 states he is not sure who contaminated the environment where Complainant was working. RMO3 states the contamination may have happened while Complainant was still at the poultry plan, and the district office would have handled that. RMO3 contends that the district office would decide on Complainant's request to return to her original work location or lateral transfer to another location. RMO3 states when an employee applies for a lateral transfer, they usually are placed at the bottom of the list, and this list is worked from top-down as positions come open. RMO3 states he does not have any knowledge of Complainant's hardship transfer as it would be a district decision. (ROI; Ex. 12; pgs. 229-231)

**Issue 4a:**     **On unspecified dates, management failed to address her on the job injuries.**

*Complainant's Allegations*

Complainant states she had multiple injuries while on the job, and in addition, there was an ammonia breakout in Liberal, Kansas. Complainant contends she was told the

ammonia "wasn't strong enough where I was standing to remove her," however Complainant alleges she was sweating and dripping blood. Complainant alleges she regularly stood in animal blood and feces all day in hot temperatures. Complainant contends she has to regularly ask for air. Complainant contends she was not given the paperwork required to apply for Worker's Compensation. Complainant contends she told her supervisors about her job injuries. Complainant contends there was no response. Complainant contends she was also harassed by a male co-worker, which she reported; however, Complainant states no corrective action was taken. Complainant contends her supervisors avoid her and that she is treated "badly." Complainant contends her health has continued to decline. Complainant contends she is isolated because she cannot communicate with most co-workers. (ROI; Ex. 8; pgs. 64-66)

*Agency's Response*

RMO1 states he is not aware of Complainant's on-the-job injuries. RMO1 contends the procedure is to complete an injury report and see the company nurse and doctor if necessary. RMO1 states Complainant expressed she felt harassed about being removed from the poultry plant and moving to the beef plant. RMO1 contends he told her she was removed from the poultry plant due to the new poultry inspection regulations, and she would need to apply for promotion. RMO1 states he addressed Complainant's concern that a co-worker was too close to her with his knives. RMO1 contends he discussed this concern with Complainant and admonished the co-worker not to expose the knives to another inspector. (ROI; Ex. 10; pgs. 211-212)

RMO2 states he has no knowledge of Complainant's on-the-job injuries. RMO2 states Complainant must fill out a form indicating her on-the-job injuries. RMO2 states Complainant did report her harassment; however, Complainant has a problem with personal space and did not believe her co-worker was hovering. (ROI; Ex. 10; pgs. 221-222)

RMO3 states he has no knowledge of Complainant's on-the-job injuries. (ROI; Ex. 12; pgs. 230-231)

### **Relevant Documentary Evidence**

Exhibit 6        Organizational Chart as of March 2020

Exhibit 7        Workforce Profile, date March 22, 2020

Exhibit 14      Complainant's Position Description

Exhibit 15      Complainant's Performance Evaluations, FY2018, FY2019

Exhibit 16      Letter of Instruction, dated July 31, 2019

Exhibit 17      Letter of Reprimand, dated March 11, 2020

Exhibit 18    Employees Issued Letter of Reprimand by Same Management, January
              2019-March 2020

Exhibit 19    Documents Regarding Complainant Reporting to Work April 2020

Exhibit 20    Medical Documents Maintained by the Agency

Exhibit 21    Complainant's Reassignment Letter, dated August 27, 2018

Exhibit 22    Complainant's Reassignment Request

Exhibit 23    Complainant Evidence File

Exhibit 24    Agency's Reassignment Request

Exhibit 25    FSIS Directive 3830.2 Government Travel Card Program

## Applicable Law

Title VII of the Civil Rights Act of 1964 (Title VII) prohibits discrimination in the terms,
conditions and privileges of employment on account of a person's race, color, national
origin, religion and sex.  Under the Title VII, it is unlawful to discriminate against a
person with respect to any term, condition, or privilege of employment, including hiring,
firing, promotion, layoff, compensation, benefits, job assignments, and training. (42
US.C. § 2000e-2) Additionally, the opposition clause of Title VII makes it unlawful to
discriminate against an employee in reprisal for employee participation in protected
activity to challenge unlawful behavior by their employer. Id.

### Disparate Treatment

In the absence of direct evidence, the complainant must rely on circumstantial evidence
to prove discriminatory intent using the burden-shifting analysis first enunciated in
McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).  Under the McDonnell
Douglas framework, a complainant must initially establish a *prima facie* case of
discrimination by presenting facts that, if left unexplained, give rise to the presumption
of intentional discrimination. McDonnell Douglas, 411 U.S. at 802.  If the complainant
establishes a *prima facie* case of discrimination, the burden shifts to the Agency to
articulate legitimate, nondiscriminatory reasons for its actions.  Texas Department of
Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).  The Agency's burden is not
one of credibility or persuasion but instead of production.  Reeves v. Sanderson
Plumbing Products, Inc., 530 U.S. at 142.  In other words, the agency "…must clearly
set forth, through the introduction of admissible evidence, reasons for its actions which,
if believed by the trier of fact, would support a finding that unlawful discrimination was
not the cause of the employment action." St. Mary's Honor Center v. Hicks, 509 U.S.
502 (1993) (*citing* Burdine, 450 U.S. at 254-55, n.8).  If the Agency meets its burden,

then the complainant is burdened with proving, by a preponderance of the evidence, that the Agency's ostensibly legitimate and nondiscriminatory reasons were pretext for discrimination. Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875 (1984); Burdine, 450 U.S. at 253-56.

Once the complainant establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Burdine, 450 U.S. at 254. In order to fulfill this burden, "the [Agency] must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of facts, would support a finding that unlawful discrimination was not the cause of the employment action. Id. at 254-255, n. 8. Only the burden of production shifts to the Agency. The ultimate burden of persuasion that the Agency intentionally discriminated against the complainant remains, at all times, with the complainant. Id. at 253. Furthermore, it is not enough for the fact finder to disbelieve the Agency's rationale for its actions; instead, the fact finder must be persuaded by the elements of the complainant's *prima facie* case. See, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Once the Agency satisfies its burden of production with sufficient specificity, the initial presumption of discrimination accompanying the *prima facie* case is eliminated. McDonnell Douglas, 411 U.S. at 802. The complainant then has the opportunity to rebut the Agency's explanations for its decision by demonstrating "that the proffered reason was not the true reason for the employment decision.... [the complainant] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256; See, Hicks, 509 U.S. at 502. Moreover, the complainant "need not necessarily offer evidence beyond that offered to establish a *prima facie* case. The... same evidence that the [complainant] has introduced to establish a *prima facie* case" may be considered to determine whether the Agency's explanation is pretextual. Id. at 502.

### *Race, Color, National Origin and Sex*

To establish a *prima facie* case of race and sex discrimination, the complainant must establish: (1) she/he belongs to a protected class; (2) she/he was adversely affected by an agency personnel decision, action or change; and (3) she/he was treated less favorably than similarly situated individuals outside her/his group or, in the alternative, that there is some other evidence raising an inference of discrimination. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996).

### *Age*

The Age Discrimination in Employment Act (ADEA) protects employees 40 years ( age and older against age discrimination. See 29 U.S.C.A. § 621 et seq. In order 1 establish a *prima facie* case of age discrimination, a complainant must show proof ( the ADEA criteria set forth by the Supreme Court in McDonnell Douglas; Id. O'Conno

v. Consolidated Coin Caterers Corporation, 517 U.S. 308 (1996); Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979); and Mitchell v. Department of the Interior, EEOC Appeal No. 01990787 (January 10, 2002). The Agency's burden to articulate a legitimate, nondiscriminatory reason for its action and the complainant's burden ultimately to prove pretext remain the same as in an ADEA disparate treatment case. The Court in O'Connor also held that it is not just a question of whether a comparison employee is outside the protected age category but also whether the comparator is substantially younger than the complainant. See also Pullman v. U.S. Postal Service, EEOC Appeal No. 01A31036 (March 18, 2004); Hammersmith v. Social Security Administration, EEOC Appeal No. 01A05922 (March 6, 2002) (more than five-year difference sufficient); and Hickman v. Department of Justice, EEOC Appeal No. 01A11797 (December 20, 2001) (four-year difference not sufficient). Conversely, the ADEA does not protect an individual in the protected age category from the treatment afforded to an older individual. See General Dynamics Land Systems, Inc. v. Cline et al., 540 U.S. 581(2004). A complainant alleging age discrimination must prove not only that age was considered, but also that age made a difference in the outcome of the employer's decision-making process; i.e. was the determining factor. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) and Hazen Paper Company v. Biggins, 507 U.S. 604, 610 (1993). If the complainant's burden fails on either point, no relief is provided. Cleverly v. Western Electric Company, 594 F.2d 638, 641 (5th Cir. 1979); Kentroti v. Frontier Airlines, 585 F.2d 967, 974 (10th Cir. 1978); Laugeson v. Anaconda Company, 520 F.2d 307, 317 (6th Cir. 1976). See also Sullivan v. Tennessee Valley Authority, EEOC Appeal No. 01940217 (November 9, 1994) and Lasley v. Department of Veterans' Affairs, EEOC Appeal No. 01870615 (October 8, 1987).

While private sector litigants must establish "but for" causation in connection with an age discrimination claim, that is not the case in the federal sector where a mixed motive analysis can be applied in an age case. Compare Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343 (2009) with Fuller v. Gates, 2010 U.S. Dist. LEXIS 17987 (E.D. TX 2010) and Alotta v. Department of Transportation (Federal Aviation Administration), EEOC Appeal No. 0120093865 (June 17, 2011). Thus, in the Federal sector the complainant must establish that age was considered, and it was a determinative factor.

### *Disability*

The Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. §791 et seq., prohibits discrimination against qualified individuals with a disability in the Federal Government. In order to establish a *prima facie* case of disability discrimination, complainant must demonstrate that: (1) she/he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she/he is a "qualified individual with a disability" pursuant to 29 C.F. R. § 1630.2(m); and (3) that she/he was subjected to an adverse personnel action under circumstances giving rise to an inference of disability discrimination. *See* Prewitt v. United States Postal Service, 662 F.2d292 (5th Cir. 1981)

An individual with a disability is defined as someone who (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of

such impairment, or (3) is regarded as having such impairment. 29 C.F.R. §1630.2(g).

A qualified individual with a disability means, with respect to employment, a person with disabilities who, with or without reasonable accommodation, can perform the essential functions of the position and who satisfies the requisite skill, experience, education, and other job-related requirements of the position.  29 C.F.R. §1630.2(m). An individual who is not a qualified individual with a disability is not entitled to an accommodation.

An impairment is substantially limiting when an individual is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner or duration under which she/he can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j).  Major life activities include working. 29 C.F.R. §1630.2(i).

Factors to be considered in determining whether an individual is substantially limited in a major life activity include: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).  Major life activities include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i).  An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. 42 U.S.C. §12102 (4)(d)

The Americans with Disabilities Act Amendments Act of 2008 (ADAAA) expanded the definition of disability under the Federal disability antidiscrimination statutes, including the Rehabilitation Act.  Specifically, the ADAAA provided that the term disability "shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of the Act."  As a result, the focus is no longer on whether the individual seeking protection under the Rehabilitation Act (or other Federal disability antidiscrimination statutes) is disabled, but instead on whether the individual was subjected to discrimination.

***Reprisal***

Reprisal claims are distinct from disparate treatment and harassment claims and require a slightly different analytical framework.  A complainant can establish a *prima facie* case of reprisal discrimination by showing that:  1) she/he engaged in activity protected under Title VII; 2) the alleged discriminating officials were aware of her/his protected activity; 3) she/he was disadvantaged by an Agency action contemporaneous with or subsequent to her/his protected activity; and 4) a nexus exists between the protected activity and the adverse action.  The causal connection may be shown by evidence that the adverse action followed the protected activity within such a period of time and in

such a manner that a reprisal motive is inferred. *See* McDonnell Douglas, 411 U.S. 792; Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976); Simens v. Department of Justice, EEOC Request No. 05950113 (March 28, 1996).

The EEOC's policy is to view reprisal claims with a broad view of coverage. Carroll v. Dep't of Army, EEOC Request No. 05970939 (April 3, 2000), EEOC Compliance Manual, EEOC Order No. 915.003, "Retaliation," pp. 8-15 (May 20, 1998). The EEOC, in Carroll, held that "claimed retaliatory actions which can be challenged are not restricted to those which affect a term or condition of employment." Therefore, a complainant is protected from any action which is reasonably likely to deter or suppress protected EEO activity. Id.

To establish a causal connection, the complainant must show, by a preponderance of the evidence, that the persons responsible for the conduct at issue had knowledge of her/his prior EEO activity at the time the challenged conduct occurred. *See* Mason v. Tennessee Valley Authority, EEOC Appeal No. 01840126 (December 31, 1984). The complainant cannot prevail simply by showing that someone in the Agency had knowledge of the protected activity. Odom v. U.S. Postal Service, EEOC Appeal No. 01842223 (June 2, 1986). Additionally, where the complainant seeks to establish a causal connection based on the temporal proximity between the Agency's knowledge of the protected activity and the Agency's actions, the proximity must be "very close." Clark County School District v. Breeden, 121 S.Ct. 2264 (2001) (*citing* O'Neal v. Ferguson Construction Co., 237 F.2d 1248, 1254 (10th Cir. 2001); *see also* Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient).

### *Harassment (nonsexual)*

Harassment of an employee that would not occur but for the employee's protected status is unlawful if it is sufficiently severe or pervasive. Wibstad v. U. S. Postal Service, EEOC Appeal No. 01972699 (August 14, 1998), citing McKinney v. Dole, 765 F.2d 1129, 1138-1139 (D.C. Cir. 1985), and Long v. Attorney General, EEOC Appeal No. 01984213 (July 10, 2001). Harassment due to an individual's prior EEO activity is also actionable. Roberts v. Department of Transportation, EEOC Appeal No. 01970729 (September 15, 2000).

To establish a claim of harassment, a complainant must show that: (1) she/he belongs to a statutorily protected class; (2) she/he was subjected to unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment had the purpose or effect of unreasonably interfering with her/his work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. McCleod v. Social Security Administration, EEOC Appeal No. 01963810 (August 5, 1999). While hostile work environment cases are most often based on allegations of sexual harassment, similar principles are applicable for analyzing

discrimination based on race, national origin, or religion. <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 106 S.Ct. 2399 (1986); <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993).

The Supreme Court has held that an employer who creates or tolerates a work environment which is permeated with "discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to alter the terms and conditions of an individual's employment and which creates an abusive work environment is in violation of Title VII. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993), citing <u>Meritor Savings Bank F.S.B. v. Vinson</u>, 477 U.S. 57 (1986). The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. <u>Harris</u>, supra at 17. In order to support a finding of a hostile work environment, more than a few isolated incidents of enmity based on race, gender, national origin, religion, etc. must have occurred. <u>Johnson v. Bunny Bread Co.</u>, 646 F.2d 1250, 1257 (8th Cir. 1981) and <u>Cariddi v. Kansas City Chiefs Football Club, Inc.</u>, 568 F.2d 87, 88 (8th Cir. 1977). There must have been a steady barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. <u>Snell v. Suffolk County</u>, 782 F.2d 1094 (2nd Cir. 1986).

The EEOC has repeatedly held that remarks unaccompanied by a concrete agency action are not a direct or personal deprivation sufficient to render an individual aggrieved. <u>Johnson v. Department of Justice</u>, EEOC Appeal No. 01986199 (February 18, 2000); <u>Backo v. U. S. Postal Service</u>, EEOC Request No. 05960227 (June 10, 1986); and <u>Henry v. U. S. Postal Service</u>, EEOC Request No. 05940695 (February 9, 1995). The Commission has also agreed with the courts and held that in order to establish a case of harassment that constitutes a hostile work environment, the harassment must be ongoing and continuous and that a few isolated incidents will not be sufficient to constitute discriminatory harassment. <u>McGivern v. U. S. Postal Service</u>, EEOC Request No. 05930481 (March 17, 1994) and <u>Vargas v. Department of Justice</u>, EEOC Request No. 05931047 (October 7, 1993). The conduct involved must be viewed in the context of the totality of the circumstances including, among other things, the nature and frequency of the offensive encounters and the time span over which the encounters occurred. <u>Rabidue v. Osceola Refining Company</u>, 805 F.2d 611, 620 (6th Cir. 1988) and <u>Gilbert v. City of Little Rock</u>, 722 F.2d 1390, 1394 (8th Cir. 1993). There are two rules for employer liability in hostile environment cases: (1) If the hostile environment is created by a supervisor or manager, the employer is liable unless, as an affirmative defense, the employer can show: (a) The employer exercised reasonable care to prevent and promptly correct any harassing behavior; and (b) The employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm; (2) If the hostile environment is created by a co-worker, the employer is liable if: (a) the employer knew or should have known of the harassment; and (b) failed to take prompt and effective corrective action.

An agency may generally avoid liability by showing that the acts complained of did not

occur, that the conduct complained of was not unwelcome, that the alleged harassment was not "sufficiently severe or pervasive" to alter the terms or conditions of the complainant's employment or to create a hostile work environment, that immediate and appropriate corrective action was taken as soon as the employer was put on notice, or that there is no basis for imputing liability to the employer under agency principles. Crane v. U.S. Postal Service, EEOC Appeal No. 01924585 (April 22, 1993) and Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986).

If the alleged harasser is a supervisor and a tangible employment action is involved, the Agency will be strictly liable.  Burlington Industries v. Ellerth, 524 U.S. 742, 765 (1998); Faragher, 524 U.S. 775, 808 (1998); and Enforcement Guidance, supra, page 7. An acting supervisor is a supervisor for the purposes of this test.  Rhodes v. U.S. Postal Service, EEOC Appeal No. 01980284 (September 2, 1999).

When harassment does not result in a tangible employment action and a supervisor or co-worker is accused of the harassing conduct, the Agency can raise an affirmative defense to liability by demonstrating that it exercised reasonable care to prevent and correct promptly any harassing behavior and that the employee unreasonably failed either to take advantage of any preventive or corrective opportunities provided by the Agency or to avoid harm otherwise.  Ellerth, supra at 765; Faragher, supra at 807, and Enforcement Guidance, supra, page 12.  The corrective action necessary will depend upon the facts of the case and must be prompt and reasonably calculated to end the harassment. Taylor v. Department of the Air Force, EEOC Request No. 05920194 (July 8, 1992) and Olsen v. Department of Housing and Urban Development, EEOC Request No. 05930413 (June 16, 1994).  If the actions taken by a supervisor culminate in a tangible employment action, this affirmative defense is not available.  Ellerth, supra at 765; Faragher, supra at 808; and Enforcement Guidance, supra, page 7.  If a co-worker of Complainant is involved, the Agency will be liable if it knew or should have known about the problem and failed to take prompt and effective corrective action.  Lutticken v. Department of Health and Human Services, EEOC Request No. 05900386 (April 27, 1990) and 29 C.F.R. § 1604.11(d).

The decisions establish that the anti-discrimination laws are not a "general civility code" and that the conduct complained of must be so objectively offensive as to alter the terms and conditions of one's employment.  Routine work assignments, instructions, and admonishments do not rise to the level of discriminatory harassment.  DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000); Wolf v. U.S. Postal Service, EEOC Appeal No. 01961559 (July 23, 1998); and Bennett v. Department of the Navy, EEOC Request No. 05980746 (September 19, 2000).

## Analysis and Findings

**Claim 1:**     **In April 2020, management required her to physically report to her duty station for work and failed to inform employees that their co-workers tested positive for COVID-19.**

### *Race, Color, National Origin, Sex, Age, and Disability*

We find Complainant has not met her *prima facie* case of discrimination based on race, sex, age, national origin, color, and disability. Complainant is a member of the protected classes by virtue of her race, sex, age, color, national origin, and disability. Complainant alleges she suffered an adverse action when in April 2020, management required her to physically report to her duty station for work and failed to inform employees that their co-workers tested positive for COVID-19. However, Complainant does not assert similarly situated individuals outside of her protected classes were treated more favorably. Accordingly, Complainant has not established a *prima facie* case of employment discrimination based on her race, color, national origin, sex, age, and disability.

Assuming, *arguendo*, that Complainant has shown a *prima facie* case, the Agency has proffered a legitimate, nondiscriminatory reason for its actions. RMO1 testifies the Agency's policy during this time was for all employees who tested positive for COVID-19 to receive two weeks of pay, and if you were not exhibiting any symptoms before the end of the 2-weeks, you could return to work. RMO1 testifies to his knowledge the Complainant had not provided documentation that she had a positive COVID-19 test. RMO1 testifies that he requested Complainant return to work based upon this policy. RMO1, RMO2, and RMO3 testified that once the Agency became aware someone tested positive for COVID-19, all employees were informed during a meeting. RMO2 testifies at this time; employees wore masks, were socially distant, and had plexiglass dividers. Complainant does not rebut the testimony of RMO1, RMO2 and RMO3. Accordingly, we find Complainant failed to establish a *prima facie* case.

### *Reprisal*

We find Complainant has failed to establish a *prima facie* case of reprisal discrimination. Complainant engaged in prior protected activity in 2007, 2008, 2010, 2018, and 2019. Complainant was subjected to an adverse employment action when in April 2020, management required her to physically report to her duty station for work and failed to inform employees that their co-workers tested positive for COVID-19. However, Complainant has failed to substantiate the proximity between her EEO activity in 2007, 2008, 2018, and 2019 and the alleged adverse employment actions, as the evidence proffered does not support a nexus sufficient to establish a *prima facie* case.

However, assuming *arguendo* that Complainant is able to establish a *prima facie* case, the Agency has articulated a legitimate, nondiscriminatory reason for its actions. RMO1 testifies the Agency's policy during this time was for all employees who tested positive for COVID-19 to receive two weeks of pay, and if you were not exhibiting any symptoms before the end of the 2-weeks, you could return to work. RMO1 testifies to his knowledge the Complainant had not provided documentation that she had a positive COVID-19 test. RMO1 testifies that he requested Complainant return to work based upon this policy. RMO1, RMO2, and RMO3 testified that once the Agency became aware someone tested positive for COVID-19, all employees were informed during a

meeting. RMO2 testifies at this time; employees wore masks, were socially distant, and had plexiglass dividers. Complainant does not rebut the testimony of RMO1, RMO2 and RMO3. Accordingly, we find Complainant failed to establish a *prima facie* case.

**Claim 2:      On March 13, 2020, management issued her a Letter of Reprimand.**

*Race, Color, National Origin, Sex, Age, and Disability*

We find Complainant has met her *prima facie* case of discrimination based on race, sex, age, color, national origin, and disability. Complainant is a member of the protected classes by virtue of her race, sex, age, color, national origin, and disability. Complainant alleges she suffered an adverse action when on March 13, 2020, management issued her a Letter of Reprimand. Complainant asserts similarly situated individuals outside of her protected classes were treated more favorably. Accordingly, Complainant has established a *prima facie* case of employment discrimination based on her race, sex, age, national origin, color, and disability.

However, the Agency has proffered a legitimate, nondiscriminatory reason for its actions. RMO1 and RMO2 testify Complainant received the LOR from the district office due to her government credit card being past due. RMO1 testifies Complainant was asked to furnish her billing statements and bank statements but refused. The evidence of record indicates the Agency admonished Complainant several times for the failure to pay her government credit card through emails, a Letter of Instruction, and subsequently a Letter of Reprimand due to the repeated overdue balances.

Complainant testifies a white female employee with an overdue balance on her government credit card was able to be promoted. However, RMO1 testifies this employee was also issued a LOR and was promoted for a position she applied for after she had resolved her credit card issue. RMO3 testifies there were a group of employees who also had issues with the government credit cards, and Complainant was one of them. Complainant does not rebut the testimony of RMO1, RMO2, and RMO3.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate, nondiscriminatory reasons proffered are pretext, masking illegal discrimination. We find Complainant has not provided sufficient evidence to prove that the Agency's legitimate, nondiscriminatory reasons for its actions are pretext for discrimination. Accordingly, we find Complainant failed to establish a *prima facie* case.

*Reprisal*

We find Complainant has failed to establish a *prima facie* case of reprisal discrimination. Complainant engaged in prior protected activity in 2007, 2008, 2010, 2018 and 2019. Complainant was subjected to an adverse employment action when on March 13, 2020, management issued her a LOR. However, Complainant has failed to substantiate the proximity between her EEO activity in 2007, 2008, 2018, and 2019 and the alleged

adverse employment actions, as the evidence proffered does not support a nexus sufficient to establish a *prima facie* case.

However, the Agency has proffered a legitimate, nondiscriminatory reason for its actions. RMO1 and RMO2 testify Complainant received the LOR from the district office due to her government credit card being past due. RMO1 testifies Complainant was asked to furnish her billing statements and bank statements but refused. The evidence of record indicates the Agency admonished Complainant several times for the failure to pay her government credit card through emails, a Letter of Instruction, and subsequently a Letter of Reprimand due to the repeated overdue balances.

Complainant testifies a white female employee with an overdue balance on her government credit card was able to be promoted. However, RMO1 testifies this employee was also issued a LOR and was promoted for a position she applied for after she had resolved her credit card issue. RMO3 testifies there were a group of employees who also had issues with the government credit cards, and Complainant was one of them. Complainant does not rebut the testimony of RMO1, RMO2, and RMO3.

Next, the burden shifts back to Complainant to demonstrate the Agency's legitimate, nondiscriminatory reasons proffered are pretext, masking illegal discrimination. We find Complainant has not provided sufficient evidence to prove that the Agency's legitimate, nondiscriminatory reasons for its actions are pretext for discrimination. Accordingly, we find Complainant failed to establish a *prima facie* case.

**Claim 3:** **On an unspecified date(s), management assigned her duties that were located in a contaminated environment which is not regularly cleaned and failed to approve her return to her original work location or for a lateral transfer to another location.**

### *Race, Color, National Origin, Sex, Age, and Disability*

We find Complainant has met her *prima facie* case of discrimination based on race, sex, age, color, national origin, and disability. Complainant is a member of the protected classes by virtue of her race, sex, age, color, national origin, and disability. Complainant alleges she suffered an adverse action when management assigned her duties in a contaminated environment that is not regularly cleaned and failed to approve her return to her original work location or for a lateral transfer to another location. Complainant asserts similarly situated individuals outside of her protected classes were treated more favorably. Accordingly, Complainant has established a *prima facie* case of employment discrimination based on her race, sex, age, national origin, color, and disability.

However, the Agency has proffered a legitimate, nondiscriminatory reason for its actions. RMO1 testifies mild ammonia smell was investigated and found to be within OSHA standards and well below the levels for evacuation. RMO1 testifies he offered to move Complainant; however, she declined to be relieved. RMO1 testifies all employees must follow Agency policies for transfers, lateral reassignments, or a promotion. RMO1

testifies Complainant was moved to Liberal, Kansas due to a work reduction at the poultry plant. RMO2 testifies Complainant did not make the final roster when the procedures for inspection changed within the poultry plants, resulting in the displacement of her and other employees placed in other plants. RMO1, RMO2, and RMO3 all testified it was not in the purview of their position to make decisions to approve laterals, transfers, or promotions. RMO1 testifies Complainant was offered a lateral but declined due to its location. RMO1, RMO2, and RMO3 all testified they had no decision-making authority with respect to Complainant's hardship transfer.

Complainant rebuts the testimony and alleges since she has been at National Beef, two white females have received a lateral transfer to a plant in Springdale, Arkansas. The evidence of record indicates the Agency reviewed Complainant's reassignment request shows on June 5, 2019, Complainant's request for reassignment was received and she was given a ranking based upon her return rights and location request. Additionally, on October 11, 2019, Complainant received a letter from Human Resources indicating her request for special consideration due to medical hardship was forwarded to the District for final decision. The letter indicated in accordance with Labor Management Agreement, Article 27, Reassignments, Complainant's request was denied as it did not justify priority consideration over other FSIS employees in the lateral reassignment system. Accordingly, we find Complainant failed to establish a *prima facie* case.

### *Reprisal*

We find Complainant has failed to establish a *prima facie* case of reprisal discrimination. Complainant engaged in prior protected activity in 2007, 2008, 2010, 2018 and 2019. Complainant was subjected to an adverse employment action when on an unspecified date(s), management assigned her duties that were located in a contaminated environment which is not regularly cleaned and failed to approver her return to her original work location or for a lateral transfer to another location. However, Complainant has failed to substantiate the proximity between her EEO activity in 2007, 2008, 2018, and 2019 and the alleged adverse employment actions, as the evidence proffered does not support a nexus sufficient to establish a *prima facie* case.

However, the Agency has proffered a legitimate, nondiscriminatory reason for its actions. RMO1 testifies mild ammonia smell was investigated and found to be within OSHA standards and well below the levels for evacuation. RMO1 testifies he offered to move Complainant; however, she declined to be relieved. RMO1 testifies all employees must follow Agency policies for transfers, lateral reassignments, or a promotion. RMO1 testifies Complainant was moved to Liberal, Kansas due to a work reduction at the poultry plant. RMO2 testifies Complainant did not make the final roster when the procedures for inspection changed within the poultry plants, resulting in the displacement of her and other employees placed in other plants. RMO1, RMO2, and RMO3 all testified it was not in the purview of their position to make decisions to approve laterals, transfers, or promotions. RMO1 testifies Complainant was offered a lateral but declined due to its location. RMO1, RMO2, and RMO3 all testified they had no decision-making authority with respect to Complainant's hardship transfer.

Complainant rebuts the testimony and alleges since she has been at National Beef, two white females have received a lateral transfer to a plant in Springdale, Arkansas. The evidence of record indicates the Agency reviewed Complainant's reassignment request shows on June 5, 2019, Complainant's request for reassignment was received and she was given a ranking based upon her return rights and location request. Additionally, on October 11, 2019, Complainant received a letter from Human Resources indicating her request for special consideration due to medical hardship was forwarded to the District for final decision. The letter indicated in accordance with Labor Management Agreement, Article 27, Reassignments, Complainant's request was denied as it did not justify priority consideration over other FSIS employees in the lateral reassignment system. Accordingly, we find Complainant failed to establish a *prima facie* case.

### Harassment (nonsexual): All Claims

Complainant fails to establish a *prima facie* case of harassment. To establish a *prima facie* case of harassment, Complainant must show that "(1) she/he belongs to a statutorily protected class; (2) she/he was subjected to unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment had the purpose or effect of unreasonably interfering with his/her work performance and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. McCleod v. Social Security Administration, EEOC Appeal No. 01963810 (August 5, 1999). Complainant is a member of protected classes based on her sex, race, color, national origin, disability, age, and reprisal. Complainant alleges she was subjected to unwelcome conduct when management failed to address her on the job injuries. To prove a harassment claim, a complainant must show more than a few isolated incidents of enmity based on race, gender, national origin, religion, etc. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981) and Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir. 1977). The issues alleged by Complainant are too few and isolated to rise to the level of harassment. Therefore, we conclude element four of the test for harassment is not met. Thereby, we find Complainant does not prove a *prima facie* claim of harassment.

Additionally, Complainant does not allege, and we do not find, management consistently subjected her to personal slurs or other denigrating or insulting verbal conduct relating to his protected classes. Even if we credit all of Complainant's allegations, the behavior complained of does not create a work environment "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21. Therefore, we do not find a reasonable person would find conditions complained of by Complainant as abusive or hostile. Based upon the foregoing facts, we find the Agency did not subject Complainant to a hostile work environment.

### Conclusion

The weight of the evidence indicates neither discrimination nor harassment occurred with respect to the issues in this complaint. Accordingly, no relief or corrective action is warranted or ordered in this matter.

## APPEAL RIGHTS

This is the final decision of the USDA on the cited complaint. The following are the only rights available to challenge this decision.

## APPEAL TO THE EEOC

A Notice of Appeal may be filed with the EEOC within thirty (30) calendar days after receipt of this final decision. EEOC Form 573 Notice of Appeal/Petition, should be used in filing the appeal, as well as what is being appealed should be indicated in the form. A copy of EEOC Form 573 is provided with this decision. Such notice should be addressed to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P. O. Box 77960**
**Washington, DC  20013**

As an alternative to mailing, your appeal may be hand-delivered to:

**Equal Employment Opportunity Commission**
**Office of Federal Operations**
**131 M Street, NE**
**Suite 5SW12G**
**Washington, DC  20507**

As an alternative, you may also send your appeal by fax to the Office of Federal Operations at **(202) 663-7022**.

If there is an attorney of record, thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of your receipt of this decision.

The appeal shall be deemed filed on the day it is postmarked, or in the absent of a postmark, on the date it is received by the EEOC.

At the time information is provided to the EEOC (to include a copy of the Notice of Appeal and any submissions in support of the appeal), there **must** be a service certification that a copy of the submission **has been** submitted to the USDA/Employment Complaints Division and the date and method of service. A copy of the appeal and any submissions in support thereof shall be forwarded to the Agency

at the following address:

**U.S. Department of Agriculture
Center for Civil Rights Enforcement
Employment Complaints Division
1400 Independence Avenue, S.W.
Washington, DC  20250-9440**

Please note that, if your appeal is not filed within the thirty (30) calendar daytime limit, the appeal may be dismissed by the EEOC.  However, the EEOC may, at its discretion, extend the time limits and accept the appeal based upon a written statement that there was no actual notification of the time limit, or that a timely Notice of Appeal could not be filed, due to extenuating circumstances.

Any statement or brief in support of your appeal must be submitted to the EEOC within thirty (30) calendar days of filing of the Notice of Appeal. The EEOC, Office of Federal Operations accepts statements or briefs in support of appeals by facsimile transmittal, provided that they are not more than ten (10) pages long.

Any statement or brief in opposition to your appeal must be submitted to the EEOC and served on you (or your attorney of record, if represented by an attorney) within thirty (30) calendar days of receipt of the statement or brief supporting the appeal, or if no statement or brief supporting the appeal has been filed, within sixty (60) calendar days of receipt of the appeal.

It is the responsibility of USDA to submit the entire complaint file to the EEOC, Office of Federal Operations, within thirty (30) calendar days of initial notification that an appeal has been filed.

## CIVIL ACTION IN FEDERAL DISTRICT COURT

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

1) within ninety (90) calendar days of receipt of this final decision if no appeal has been filed; or

2) within ninety (90) calendar days after receipt of the EEOC's final decision on appeal; or

3) after one hundred and eighty (180) calendar days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the Agency or department. In your case, you **must** name **Thomas J. Vilsack, Secretary of Agriculture**, as the defendant. You must also state the official title of the agency head or department head. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action, under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court**. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action <u>MUST BE</u> <u>FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date you receive the final decision by USDA or an EEOC decision on appeal.

Unless an appeal is filed in the EEOC, failure to file a civil action within ninety (90) calendar days may result in the dismissal of your civil action. Filing a civil action under 29 C.F.R. § 1614.407 or § 1614.408 shall terminate processing an appeal before the EEOC. If a civil action is filed subsequent to filing an appeal with the EEOC, the parties are requested to notify the EEOC in writing.

_____
Kirk Perry
Director
Employment Adjudication Division

February 14, 2022
_____
Date

**U. S. DEPARTMENT OF AGRICULTURE**
**Center for Civil Rights Enforcement**
**Complaint of Employment Discrimination**

Complainant:        Phyllis Walker

Complaint No.:      FSIS-2020-00608

Agency:             Food Safety and Inspection Service

**Certificate of Service**

I certify that the documents listed were sent on this date by email (unless otherwise specified) to:

Complainant:                        Phyllis Walker
                                    phyllis.walker63@gmail.com

Complainant's Representative:       Sandra Harris
                                    Attorney at Law, PLLC
                                    sharrislawfirm@cablelynx.com

Agency Head:                        Paul Kiecker (*interoffice mail*)
                                    Administrator
                                    Food Safety and Inspection Service
                                    Paul.kiecker@usda.gov

Agency Liaison:                     Angela Kelly (*interoffice mail*)
                                    Director, Civil Rights Division
                                    Food Safety and Inspection Service
                                    Angela.kelly@usda.gov


Enclosures:     Final Decision dated 2-14-2022
                EEOC Form 573 (to Complainant and representative, if any, only)

Email by:       YOLANDA TUCKER   Digitally signed by YOLANDA TUCKER
                                 Date: 2022.02.14 14:18:46 -05'00'